**ACETYLENE GAS COMPANY, Plaintiff, Respondent, Cross–Appellant,**

v.

**THOMAS R. OLIVER, d/b/a Ray Oliver & Son Equipment Co., Phyllis Oliver his wife, and Rose Distributors, Inc., Defendants, Appellants, Cross–Respondents.**

Nos. 69621, 69651.

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 10, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 30, 1997.

Application to Transfer Denied
March 25, 1997.

is indigent.

David M. Duree, Robert L. Carter, Reinert & Duree, P.C., St. Louis, for Appellant.

Kenneth A. Slavens, T. Michael Ward, John P. Rahoy, Brown & James, P.C., St. Louis, for Respondent.

CRANDALL, Presiding Judge.

A jury found for defendants on plaintiff's breach of contract claim and for defendant, Thomas Oliver, on his counterclaim for tortious interference with a contract or business expectancy. The trial court entered judgment notwithstanding the verdict on Thomas Oliver's counterclaim and judgment for defendants on plaintiff's breach of contract claim. Thomas Oliver appeals and plaintiff cross-appeals. We affirm in part, reverse in part and remand.

Plaintiff, Acetylene Gas Company ("AGC"), manufactures compressed gases. On May 14, 1965, AGC and Ray Oliver entered into service and resale agreements where Ray Oliver would purchase the compressed gases, in cylinders owned by AGC, and then resell the gases to "resale" customers. Typically, Ray Oliver delivered empty cylinders to AGC's facility, exchanged them for filled cylinders and delivered these cylinders directly to the resale customers or to drop stations where the resale customers would pick up the filled cylinders. The resale customers either had a lifetime lease with AGC for the cylinders or paid a daily rental fee to Ray Oliver who was billed by AGC.

In 1970, Ray Oliver's son, Thomas Oliver, took over his father's business. On April 18, 1974, Thomas Oliver ("Oliver") and AGC entered into a "resale agreement." The agreement does not describe any particular territory Oliver would serve. According to Oliver, his territory consisted of the entire area of three counties and portions of four others.

At some point between 1984 and 1986, AGC's president decided it would be preferable to phase out the use of resellers and sell

directly to the resale customers. Oliver contends that beginning in 1986, AGC began to restrict his business by changing prices, making it difficult to obtain certain products and thwarting his attempt to expand his territory. In July or August 1987, Oliver decided he would be unable to continue doing business with AGC and still earn a "living." In late August 1987, Oliver placed an oral order with a representative of a cylinder manufacturer to purchase 500 cylinders. During this time, Oliver began to incorporate Rose Distributors, Inc. Oliver sent one of the resale customers a letter which provided that he intended to sever his "ties" with AGC "sometime around November 1st, 1987" and before severing ties he would have secured his own cylinders. AGC's president acquired a copy of this letter. On September 29, 1987, AGC notified Oliver by letter that the April 18, 1974 resale agreement and May 14, 1965 service agreement were terminated effective December 31, 1987. After September 29, 1987, but prior to December 31, 1987, AGC contacted the resale customers and engaged in other actions to keep the customers' business.

Thereafter, AGC brought an action against Oliver doing business as Ray Oliver & Son Equipment Co., Phyllis Oliver his wife, and Rose Distributors, Inc. AGC alleged, in part, that in violation of their contracts defendants failed to return or account for AGC cylinders and failed to pay an outstanding balance. Oliver filed a counterclaim alleging, among other things, AGC tortiously interfered with a contract or business expectancy during the ninety-day termination period. The jury found for defendants on AGC's breach of contract claim and for Oliver on his counterclaim for tortious interference. The jury assessed actual and punitive damages. The trial court overruled AGC's motion for new trial on its breach of contract claim and sustained its motion for judgment notwithstanding the verdict on Oliver's tortious interference counterclaim. Oliver appeals and AGC cross-appeals.

### Oliver's Appeal

Oliver raises three points on appeal. A judgment notwithstanding the verdict is only appropriate when a claimant has failed to make a submissible case. *Winkler v. Robinett,* 913 S.W.2d 817, 821 (Mo.App.1995). In determining whether Oliver made a submissible case on his counterclaim, we view the evidence in the light most favorable to the verdict and give the benefit of all favorable inferences which may reasonably be drawn from the evidence. *Crawford v. Norfolk and Western Ry. Co.,* 901 S.W.2d 252, 254 (Mo. App.1995).

■ Tortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) an intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages. *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 316 (Mo. banc 1993); *Community Title v. Roosevelt Fed. Savings & Loan Ass'n,* 796 S.W.2d 369, 372 (Mo. banc 1990). A plaintiff has the burden of producing substantial evidence to establish a lack of justification. *Nazeri,* 860 S.W.2d at 316–17. If the defendant has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only its own interests. *Id.* at 317. For purposes of this tort, improper means are those that are independently wrongful such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade or any other wrongful act recognized by statute or the common law. *Id.* "Conversely, no liability arises if the defendant had an unqualified legal right to do the act complained of." *Id.*

In its written order sustaining AGC's motion for judgment notwithstanding the verdict, the trial court concluded that the resale agreement "clearly authorized" AGC to contact the resale customers to maintain its business relationship with those customers. Paragraph eleven of the 1974 resale agreement provides that, "The seller [AGC] shall not, by reason of this agreement, be restricted in the sale and/or delivery of its products." The court further concluded that AGC's contact of resale customers during the

ninety-day termination period did not violate the resale agreement and, therefore, could not be considered an independent wrongful act sufficient to "override" AGC's right to protect its economic interests.

In all three points, Oliver argues AGC breached the contracts and violated the ninety-day notice of termination for franchises, as provided in § 407.405 RSMo 1994, by: (1) contacting the resale customers; (2) cutting its prices to the resale customers by about one-half; (3) convincing at least one of Oliver's drop stations to breach its arrangement with him and work directly for AGC; and (4) violating its past practice of refunding the initial lease price for customers with lifetime cylinder leases. Oliver contends that the breach of the contracts and violation of § 407.405 constitute the improper means necessary to establish the tortious interference claim.

■ In his first point, Oliver argues that by its pleadings AGC admitted it could not contact the resale customers during the ninety-day termination period. Oliver relies on the following language from AGC's second amended petition:

18. While the Resale Agreement was in effect, plaintiff sold gases and supplied cylinders to plaintiff's Combination Service Agreement and Cylinder Lease customers through defendants. *Once the Resale Agreement was terminated, plaintiff became entitled to deal directly with its customers to whom defendants had sold leases on plaintiff's behalf,* became entitled to information in defendants' records concerning the location of plaintiff's cylinders in the hands of customers and became entitled to the return of cylinders as a result of the termination of leases.

(emphasis added). Even assuming the emphasized language constituted an admission by AGC that it could not contact the resale customers during the ninety-day period, Oliver failed to introduce the petition into evidence. Admissions in pleadings are not regarded as evidence unless the pleadings are properly introduced at trial. *Lammers v. Greulich,* 262 S.W.2d 861, 864 (Mo.1953); *Martin v. Yeoham,* 419 S.W.2d 937, 952 (Mo. App.1967). In determining the propriety of the trial court's judgment, evidence not presented to the jury should not be considered. *Martin,* 419 S.W.2d at 952. Accordingly, Oliver's first point is denied.

■ Oliver argues in his second point that AGC's course of dealing prior to the agreements and course of performance after the agreements established that AGC breached the contracts. Oliver emphasizes that AGC never sold its products in his territory prior to the ninety-day termination period. Oliver is attempting to interpret the 1974 resale agreement to provide that AGC could not cut prices or sell its products in his territory.

■ A course of performance by the parties to a contract which tends to show an interpretation by either one or both parties contrary to the plain terms of the contract does not control, but rather the contract is construed as written. *Leggett v. Missouri State Life Ins.,* 342 S.W.2d 833, 877 (Mo. banc 1960); *L & K Realty v. R.W. Farmer Constr. Co.,* 633 S.W.2d 274, 278 (Mo.App. 1982). Additionally, covenants will not be implied in a contract for any matter that is specifically covered by the written terms of the contract itself. *Glass v. Mancuso,* 444 S.W.2d 467, 478 (Mo.1969); *Crestwood Plaza v. Kroger Co.,* 520 S.W.2d 93, 98 (Mo.App. 1974).

Here, the 1974 resale agreement specifically provided that AGC was not restricted in the sale or delivery of its products. The contract is not ambiguous regarding AGC's right to sell or deliver its products. Therefore, any evidence of course of dealing or performance cannot be used to alter the plain meaning of the contract.

■ Oliver also suggests AGC waived any right it may have had to sell its products in Oliver's territory at discount prices. A waiver is the intentional relinquishment of a known right. *Howe v. Lever Bros. Co.,* 851 S.W.2d 769, 775 (Mo.App.1993). To rise to the level of a waiver, the conduct "must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of [the] conduct is possible." *Waterwiese v. KBA Constr. Managers, Inc.,* 820 S.W.2d 579, 585 (Mo.App.1991).

The factual basis for Oliver's contention is that prior to 1987, AGC did not directly sell its products in Oliver's territory. However, there are other reasonable explanations why AGC did not directly sell its products prior to 1987. AGC could have believed Oliver was protecting AGC's interests or AGC was satisfied with the monies it was earning from Oliver's sales. If these circumstances changed AGC could have been relying on its contractual right not to be restricted in the sale or delivery of its products. AGC's failure to sell its products in Oliver's territory prior to September 1987, does not demonstrate AGC intentionally relinquished its right to not be restricted in the sale or delivery of its products. AGC's conduct does not, therefore, rise to the level of waiver. Oliver's second point is denied.

■■■■ In his final point, Oliver contends AGC violated the implied covenant of good faith and fair dealing by cutting prices and selling its products in his territory. A covenant of good faith and fair dealing is implied in every Missouri contract. *Slone v. Purina Mills,* 927 S.W.2d 358, 368 (Mo.App.1996). This duty prevents one party to a contract to exercise a judgment conferred by the express terms of the agreement in such a manner that evades the spirit of the transaction or denies the other party the expected benefit of the contract. *Martin v. Prier Brass Mfg.,* 710 S.W.2d 466, 473 (Mo.App.1986). To prevail on this argument, Oliver must present substantial evidence AGC acted in bad faith or engaged in unfair dealing. *Morton v. Hearst Corp.,* 779 S.W.2d 268, 273 (Mo.App.1989).

AGC began contacting the resale customers after acquiring the letter Oliver sent to one of the resale customers. This letter indicated that Oliver intended to sever ties with AGC and he was going to acquire his own cylinders. The letter also indicates that the customer had lifetime leases with AGC for cylinders. It cannot be considered unfair dealing for AGC to attempt to keep the resale customers' business who were leasing its cylinders and through Oliver were purchasing its gases. Under these circumstances, Oliver failed to produce substantial

evidence that AGC violated the implied covenant of good faith and fair dealing.

■■■ Oliver again suggests an implied condition of the contract is that AGC cannot cut prices or sell its products directly to the resale customers. Oliver contends implying this condition is not inconsistent with paragraph eleven of the 1974 resale agreement, but rather harmonizes this paragraph with paragraph one of the agreement. Oliver also contends paragraph eleven of the resale agreement does not expressly provide that AGC can engage in the actions.

■■■ As previously discussed, paragraph eleven provides that, "[AGC] shall not, by reason of this agreement, be restricted in the sale and/or delivery of its products." The language of paragraph eleven is clear, unambiguous and permits AGC to directly sell its products and engage in other actions to assist in the sale of its products. Furthermore, even if the contract were silent on the issue, "No implied provision can be inserted to supply an obligation concerning which the contract is intentionally silent, even though without such provision the contract would be unwise or even operate unjustly." *Glass,* 444 S.W.2d at 478. Paragraph one provides that, "[AGC] recognizes the Buyer as a Reseller of its products." This language does not recognize Oliver as the only person or entity that can sell AGC products, but merely recognizes Oliver as a reseller of AGC's products. The paragraph is also not contrary to or in any way creates an ambiguity regarding paragraph eleven. Oliver's final point is denied.

### AGC's Cross–Appeal

■■■ In its cross-appeal, AGC argues that the trial court erred by failing to strike five venirepersons for cause. To demonstrate reversible error, the venireperson must have served on the jury. *Rodgers v. Jackson County Orthopedics, Inc.,* 904 S.W.2d 385, 391 (Mo.App.1995). We, therefore, only review the challenge to the sole venireperson who served on the jury. The following dialogue occurred during voir dire:

[PLAINTIFF'S COUNSEL]: ... I mentioned that Acetylene Gas is a corporation that is located in St. Louis, and the

defendants in this lawsuit, at least two of them, are Tom Oliver and Phyllis Oliver, which are residents of Montgomery County. The law says that in the eyes of the law a corporation, no matter its size, and an individual, no matter their wealth or influence or whatever, are treated the same before the eyes of the law. I guess we as Americans all have a little bit of a Rocky syndrome in us in that, you know, we always kind of root for the underdog or something like that.

What I want to ask you folks is, can you put that fact that it is a corporation suing some individuals, can you if the instructions from the Court tell you to treat them the same, do you think you can all put that aside and listen to the evidence and treat both these parties the same in this lawsuit?

VENIREMAN FRENTZEL: I don't think I could.

[PLAINTIFF'S COUNSEL]: You don't think you could? Do you think you would favor the individual over the corporation?

VENIREMAN FRENTZEL: Right.

[PLAINTIFF's COUNSEL]: Even if the instructions told you differently, that is just your belief and you are going to stick with it, I take it?

VENIREMAN FRENTZEL: Pretty well.

[PLAINTIFF'S COUNSEL]: I'm sorry?

VENIREMAN FRENTZEL: Pretty well. That's the way I believe.

[PLAINTIFF'S COUNSEL]: Okay, thank you.

\* \* \* \* \* \*

[PLAINTIFF'S COUNSEL]: ... So, what I'm trying to tell you here is the Court is the one that gives you the law you have to follow and all you have to do is decide—not all, but what your responsibility is to do is to decide facts.

Is there anyone on the panel who thinks if they were given an instruction by the Court as to what the law is and they didn't agree with it that they would not be able to follow it? In other words, could you put your own personal beliefs about what the law is aside and follow the law as it is given to you by the Court or would you impose your own personal beliefs?

I see no hands so I assume, though some of you look like you are thinking about it, but I see no hands. Anybody have any thoughts?

(No response.)

Okay. So, I assume everybody would be able to follow the law as it is given to you by the Court. Thank you.

AGC moved to strike the venireperson for cause and defendants objected. The trial court stated:

THE COURT: Later on, the jury panel in its entirety was questioned as to whether or not they would follow the Court's instructions. It was explained to them that they would determine the facts and the Court would determine the law, and he did not at that point—this was after his original answers—he did not at that point indicate he could not follow the Court's instructions. Therefore, that challenge will be denied.

■■■ Although the jury reached a unanimous verdict, AGC was still entitled to a jury of twelve impartial jurors. *Catlett v. Illinois Cent. Gulf R.R. Co.*, 793 S.W.2d 351, 353 (Mo. banc 1990). The trial court has broad discretion in ruling on challenges for cause and this discretion requires the court to consider the venireperson's responses in its entirety and make an independent evaluation of the venireperson's ability to serve. *Id.* A failure by a trial judge to question independently a potential juror to explore possible prejudice may undercut any basis for a trial judge's exercise of discretion and constitute reversible error. *Id.* "In the absence of an independent examination after equivocal responses, the appellate court is justified in conducting a more thorough review of the challenged juror's qualifications." *Id.* The critical question is whether the challenged venirepersons indicated unequivocally their ability to fairly and impartially evaluate the evidence. *Ray v. Gream*, 860 S.W.2d 325, 331–32 (Mo. banc 1993).

In the present case, the venireperson stated he would favor individuals over corpora-

tions. The answer "pretty well" in response to whether he would still favor individuals even if instructed differently, is at best equivocal and required further inquiry by the trial court or counsel. Oliver emphasizes that the venireperson did not respond when the entire panel was subsequently asked if they would follow the law. But this question did not address the particular venireperson's attitude regarding individuals and corporations, and his lack of response did not unequivocally indicate that he would fairly and impartially evaluate the evidence. *See State v. Gray,* 812 S.W.2d 935, 937–38 (Mo.App. 1991). The trial court erred by overruling AGC's motion to strike the venireperson.

Defendants contend even if the trial court erred by overruling the challenge for cause, AGC failed to make a submissible case against Phyllis Oliver and Rose Distributors, Inc. When a plaintiff asserts trial court error on appeal, the defendant may contest the submissibility of the plaintiff's case. *Meinhold v. Huang,* 687 S.W.2d 596, 598 (Mo.App.1985).

Phyllis Oliver and Rose Distributors, Inc. were not parties to the contracts upon which AGC based its claim. When a creditor seeks to hold liable a spouse who did not sign a contract, the creditor must establish that the unsigning spouse had expressly or impliedly made the signing spouse his or her agent to contract with the creditor. *McCarthy v. Wahby,* 717 S.W.2d 571, 572 (Mo.App. 1986). Phyllis Oliver testified she was half owner of Ray Oliver & Son Equipment Co. when Rose Distributors, Inc. was incorporated in 1987. Oliver stated in his deposition that he and his wife jointly owned assets of Ray Oliver & Son Equipment Co., and transferred the assets to Rose Distributors, Inc. Contrary to AGC's assertion, these statements do not establish the necessary express or implied agency relationship for the contracts made several years before 1987. AGC failed to make a submissible case as to Phyllis Oliver.

The evidence is also insufficient to find Rose Distributors, Inc. liable. A corporation is not liable on a contract made prior to its incorporation, unless credit was given the corporation to be formed, the corporation ratified the contract or the corporation received benefits from the contract. *Quality Wood Chips v. Adolphsen,* 636 S.W.2d 94, 97 (Mo.App.1982). AGC failed to produce sufficient evidence any of these three conditions was present here. Oliver's assertions in his deposition that all assets and liabilities from Ray Oliver & Son Equipment Co. were transferred to Rose Distributors, Inc. is insufficient to demonstrate the corporation ratified the contract.

The trial court's entry of judgment notwithstanding the verdict for Thomas Oliver's counterclaim is affirmed. The trial court's judgment in favor of defendants on AGC's claim is affirmed as to Rose Distributors, Inc. and Phyllis Oliver, reversed as to Thomas Oliver and remanded for further proceedings. Court costs are assessed one-half against AGC and one-half against Thomas Oliver.

HOFF and TURNAGE, JJ. concur.