[Nos. 14589-1-III; 14910-2-III.   Division Three.   April 22, 1997.]

GOODYEAR TIRE & RUBBER COMPANY, *Respondent,* v.
WHITEMAN TIRE, INC., ET AL., *Appellants.*

*Victoria L. Vreeland, David .P. Moody, Stephanie B.*

*Bloomfield,* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for appellants.

*Al Van Kampen, David A. Zapolsky, Timothy W. Cranton,* and *Bogle & Gates, P.L.L.C.;* and *F. Steven Lathrop* and *Lathrop, Winbauer, Harrel & Slothower,* for respondent.

Kurtz, J. — Does the implied covenant of good faith that is present in every contract apply to a party's exercise of an express and unconditional contract right? In this case, Goodyear Tire & Rubber Co. entered into a dealership contract with Whiteman Tire, Inc., but reserved the right to sell tires in Whiteman's trade area. We are asked to decide whether the implied covenant of good faith required Goodyear to exercise its right to compete so as not to deprive Whiteman of the benefit of its agreement to act as a Goodyear dealer. We hold the covenant does not apply in the circumstances present here.

Whiteman sold tires in central Washington[1] for many years as an independent Goodyear tire dealer. When it closed operations, it blamed its demise on competition from Goodyear company stores in the same area, and on a financially unwise expansion of its Wenatchee operations, allegedly forced on it by Goodyear. In response to a suit by Goodyear in 1990 for amounts due and owing on Whiteman's open account, the company counterclaimed for breach of contract, breach of fiduciary duties, violation of

---

[1]Whiteman operated stores in Ellensburg, Wenatchee, Othello, and Moses Lake.

the Washington Consumer Protection Act, and tortious interference with its business expectancies.[2]

The superior court summarily dismissed these counterclaims, citing, among other things, the fact Whiteman's dealer contracts with Goodyear acknowledged Goodyear reserved the right to sell tires in the same trade area. Whiteman stipulated to entry of judgment against it in the amount of approximately $350,000 on Goodyear's cause of action, and appeals the dismissal of its counterclaims. We affirm, save for the dismissal of Whiteman's counterclaim that Goodyear tortiously interfered with the noncompete agreement between it and its former employee, Jack Anthony.

Whiteman's relationship with Goodyear began in 1958. In that year, Whiteman purchased an Ellensburg Goodyear dealer store. It expanded to Wenatchee in 1982 and Othello in 1985. As a dealer, Whiteman purchased Goodyear products on open account. Its assets, accounts receivable and inventory, and the personal guaranties of shareholders, Brent and Jeanette Whiteman, secured the Goodyear account.

During the course of their relationship, Whiteman signed dealer contracts with Goodyear that expressly stated: "Goodyear retains the right to establish its own outlets for the sale of Goodyear Products or to sell Goodyear Products to other customers in Dealer's trade area or elsewhere."[3] The contracts also stated they contained the parties' complete obligations and no other obligation could be inferred by other written or oral promises by the parties or their representatives. But according to Brent Whiteman, Goodyear's representatives always assured him it would not solicit customers or interfere in the

---

[2]Goodyear's original complaint filed on August 27, 1990, listed Whiteman Tire, Inc., Whiteman Bros., Inc., Brent A. and Jeanette C. Whiteman, and Terry L. and Karen L. Gilmour as defendants. Goodyear named the individuals as defendants on the basis of personal guaranties of payment they executed in favor of Goodyear in 1986.

[3]This provision, or a variation of it, was present in every Whiteman dealer contract.

dealer's general market area so long as Whiteman adequately serviced its customers.

In 1984, Goodyear acquired Lovering Tire Company of Yakima, Whiteman's nearest Goodyear dealer. From that point, the Yakima Goodyear operated as a company store and allegedly sold tires at prices lower than Whiteman's wholesale cost, or at very low profit margins. In addition, salespeople from the Yakima store allegedly solicited Whiteman's customers in Ellensburg and elsewhere. Mr. Whiteman complained to Goodyear's district and regional representatives, who promised to keep Yakima employees from interfering with Whiteman accounts. Nevertheless, the problem continued. Whiteman believed it eventually lost several long-term customers due to Yakima Goodyear's solicitations and price undercutting.

In 1986, Goodyear representatives allegedly pressured Whiteman to expand its Wenatchee operation on the threat Goodyear would otherwise open another store there. Mr. Whiteman states he was concerned the expansion was not a wise financial decision, but felt compelled to do Goodyear's bidding to maintain Whiteman's business operations. After the expansion, Whiteman's real estate rental increased approximately $4,000 a month in the Wenatchee location.

In September 1986, Whiteman's Othello manager, Mr. Anthony, resigned. Shortly thereafter, he went to work for Goodyear's Pasco outlet. According to Mr. Whiteman, Mr. Anthony solicited Whiteman customers within a 30-mile radius of Othello, in direct violation of the noncompete provision of his employment agreement with Whiteman. Whiteman lost several customers as a result. Mr. Whiteman complained repeatedly to Goodyear. As with his complaints about the Yakima store, Goodyear representatives always assured him the interferences would cease. But Mr. Whiteman stated the problems continued, and his company lost significant amounts of money.

Whiteman closed its Wenatchee operations in 1989. Mr. Whiteman believed the closure was directly caused by the

forced expansion in Wenatchee and the activities of the Yakima store and Mr. Anthony in Whiteman's trade areas. The company was no longer earning enough to pay its existing obligations to Goodyear. It filed for bankruptcy in 1992.

In 1990, Goodyear sued Whiteman Tire and Brent and Jeanette Whiteman individually, in their capacity as guarantors, for the amount due on the open account. It asked for judgment against Whiteman Bros., Inc., in the amount of $63,285.11, plus interest; and against Whiteman Tire, Inc., and the personal guarantors,[4] in the amount of $225,875.13, plus interest. Whiteman answered and counterclaimed that Goodyear's actions constituted (1) a breach of the covenant of good faith implied in its dealer contracts with Whiteman; (2) a breach of fiduciary duties; (3) a violation of the Consumer Protection Act, RCW 19.86; and (4) tortious interference with Whiteman's customer contracts and business opportunities.

Whiteman appeals from the superior court orders granting Goodyear's motions for summary dismissal of its counterclaims. Additional, relevant facts are set forth below, with the issue they concern.

### BREACH OF CONTRACT

Whiteman contends Goodyear had an implied duty to exercise in good faith its contractual right to sell tires in Whiteman's trade area, so as not to deny Whiteman the benefit of its contract to act as a Goodyear dealer. Specifically, Whiteman argues that Goodyear could not use that right to destroy Whiteman's business.

■■ The covenant of good faith applies when the contract gives one party discretionary authority to determine a contract term; it does not apply to *contradict* contract terms. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). *Ervin*'s statement of this distinction is apt:

---

[4]Terry and Karen Gilmour were also guarantors, but are not parties to this appeal.

The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time. . . . The covenant may be relied upon only when the manner of performance under a specific contract term *allows for discretion on the part of either party* . . . . However, it will not contradict terms or conditions for which a party has bargained.

*Ervin*, 908 P.2d at 498 (emphasis added).

Whiteman relies upon *Tymshare, Inc. v. Covell*, 727 F.2d 1145 (D.C. Cir. 1984). That case interpreted a compensation agreement between salesman William Covell and his employer, Tymshare. In the agreement, Tymshare reserved the right to change the quota plan on which commissions were based, "at any time during the quota year *within [its] sole discretion*[.]" *Tymshare*, 727 F.2d at 1148 (emphasis added). Mr. Covell brought suit for breach of contract, based upon Tymshare's alleged failure to exercise its discretion to change the quota plan in good faith. The court held "sole discretion" was discretion to determine the existence of factors that reasonably justified changing the sales quota for commissions, and that a desire to deprive an employee of the agreed benefit of his labors was not such a factor. *Tymshare*, 727 F.2d at 1154. Because Mr. Covell's employment contract *contained conditions for modifying the sales quota, Tymshare*, 727 F.2d at 1148, the fact it also spoke of such modifications as being at the employer's discretion did not mean the employer could exercise that discretion without good reason.

Goodyear counters that under *Badgett v. Security State Bank*, 116 Wn.2d 563, 807 P.2d 356 (1991), the implied covenant of good faith does not work to take away a right expressly conferred by the parties' agreement. There, the Badgetts borrowed money from the Bank for their dairy operation. The loan was restructured at least twice, but the Bank refused to accept the Badgetts' third proposal for restructuring. The Badgetts defaulted, and then sued the Bank for damages on the basis it acted unreasonably

in refusing their third proposal. The trial court dismissed the action summarily, ruling that the Bank had no duty under the terms of the loan to negotiate and that the prior course of conduct could not create a new obligation on the part of the Bank. *Badgett*, 116 Wn.2d at 567-68. The appellate court affirmed, holding "[a]s a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms." *Badgett*, 116 Wn.2d at 570.

In a case with facts similar to Whiteman's situation, the Missouri Court of Appeals recently held the implied duty of good faith did not apply to an unconditional reservation of a right to compete. *Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404 (Mo. Ct. App. 1996). In *Oliver*, the plaintiff gas company contracted first with Ray Oliver, then his son Thomas, to resell its compressed gas cylinders to consumers. The contract expressly provided: " 'The seller [gas company] shall not, by reason of this agreement, be restricted in the sale and/or delivery of its products.' " *Oliver*, at 408.

In the mid-1980s, the gas company decided to enter the resale market. Mr. Oliver contended the gas company began to change prices, made it difficult to obtain certain of its products, and thwarted his attempt to expand his territory. *Oliver*, at 408. He notified his customers he intended to terminate his ties to the gas company and obtain his own supply of cylinders. The company learned of this communication and thereafter notified him their agreement was terminated effective December 31, 1987. But prior to that date, the gas company contacted Mr. Oliver's customers in an attempt to keep their business.

When the gas company sued Mr. Oliver for amounts due on account, he counterclaimed the company breached its duty of good faith by contacting his customers. The court held that the language of the agreement unambiguously permitted the company to do so. The gas company's right to sell in Mr. Oliver's trade area was not subject to

any conditions. As such, there was no room for the exercise of discretion and, consequently, nothing to which to apply the covenant of good faith.[5]

Similarly, the contract provision reserving Goodyear's right to sell in Whiteman's trade area is not stated by reference to a certain context. It is unconditional and does not call for the exercise of discretion and the consequent implied covenant to exercise that discretion in good faith. It was not reasonable for Whiteman to rely on Goodyear's assurances directly contrary to the language of the contract, especially in light of the additional provision that the contract completely expressed the obligations of the parties. *See Durkee v. Goodyear Tire & Rubber Co.*, 676 F. Supp. 189, 193 (W.D. Wis. 1987). The trial court properly dismissed Whiteman's action against Goodyear for breach of contract.

### FIDUCIARY RELATIONSHIP

Whiteman contends it created an issue of fact, sufficient to avoid summary judgment, with respect to whether Goodyear owed it fiduciary duties.

Fiduciary relationships include those historically regarded as fiduciary, and also may arise in circumstances in which "any person whose relation with another is such that the latter justifiably expects his welfare to be cared for by the former." *Liebergesell v. Evans*, 93 Wn.2d 881, 890-91, 613 P.2d 1170 (1980). In general, "[a] fiduciary relationship imparts a position of *peculiar confidence placed by one individual in another*. A fiduciary is a person with a duty to act *primarily for the benefit of another.*" *Denison*

---

[5]*See also Davis v. Sears, Roebuck & Co.*, 873 F.2d 888, 895, 897 (6th Cir. 1989). There, the court held that the covenant of good faith did not apply to a contract provision giving both parties the right to terminate the contract on 60 days' notice, because the express provision gave the parties the unconditional right to do so. However, the covenant did apply to another contract provision requiring Sears' approval of any person to whom Mr. Davis agreed to sell his business. The contract provided the purchaser must meet standards utilized by Sears in selecting new catalog merchants and, thus, was subject to the exercise of discretion.

*State Bank v. Madeira*, 230 Kan. 684, 230 Kan. 815, 640 P.2d 1235, 1241 (1982). "The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party." *Burwell v. South Carolina Nat'l Bank*, 288 S.C. 34, 340 S.E.2d 786, 790 (1986). In other words, the plaintiff must show some dependency on his or her part and some undertaking by the defendant to advise, counsel and protect the weaker party. For example, a plaintiff's lack of business expertise, and a defendant's undertaking the responsibility of providing financial advice to a close friend or family member, may indicate a fiduciary relationship. *McGowan v. Pillsbury Co.*, 723 F. Supp. 530, 536 (W.D. Wash. 1989).

In asserting the existence of a fiduciary relationship here, Whiteman relies upon the declarations of Brent Whiteman and Jim Scott, who was Goodyear's Business Counselor in Washington and four other states. In support of his contention Goodyear controlled Whiteman's success, Mr. Whiteman cited the facts the dealership leased its facilities and equipment from Goodyear and sold tires based upon Goodyear's suggested price list. Also, Goodyear required him and his wife to give their personal guaranties to secure Whiteman's purchase of Goodyear products for resale at its stores. According to Mr. Whiteman, Goodyear expected the dealership to aggressively promote Goodyear products and use its facilities and equipment primarily for the sale and servicing of Goodyear products.

Mr. Scott pointed out in his declaration that Goodyear's right to compete meant independent dealers were extremely vulnerable. Stores operated by Goodyear had greater inventory availability, the ability to offer more favorable credit, the ability to stock inventory it did not have to pay for, and access to a discount structure not offered to independent dealers. In addition, Mr. Scott was of the opinion Goodyear's compilation of market data justifying expansion of Whiteman's Wenatchee store was misleading because it was not adjusted for rural areas.

Are these assertions of fact sufficient to support a belief on Whiteman's part that Goodyear would place Whiteman's business interests even above its own? We answer "no." To the contrary, the facts indicate Goodyear primarily was interested in promoting Goodyear. Its reservation of the right to compete with its dealers amply illustrates this mindset. The existence of conflicting profit incentives between a manufacturer and dealer is at odds with a fiduciary relationship. *Rickel v. Schwinn Bicycle Co.*, 144 Cal. App. 3d 648, 192 Cal. Rptr. 732, 735-36 (1983). Moreover, Mr. Whiteman was experienced in the management of tire stores. He was capable of rejecting Goodyear's advice and exercising his own judgment about business matters. The only inequality that existed in the Whiteman/ Goodyear relationship was Goodyear's greater economic strength. That disparity did not render Whiteman powerless and cannot form the basis for this court to grant Whiteman the special protection of a fiduciary relationship. *See Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 696 F. Supp. 57, 75 (D. Del. 1988), *aff'd*, 988 F.2d 386 (3d Cir. 1993).

We conclude there was no fiduciary relationship between Whiteman and Goodyear.

## CONSUMER PROTECTION ACT

Whiteman next claims its action against Goodyear for violation of the Consumer Protection Act (CPA) raised issues of material fact.

■ ■ A CPA action consists of five elements: The plaintiff must show (1) an unfair or deceptive act or practice, (2) occurring in the conduct of trade or commerce, (3) affecting the public interest, and (4 and 5) causing injury to the plaintiff in his business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986). All elements must be present; a finding that any element is missing is fatal to the claim. *Hangman Ridge*, 105 Wn.2d at 793. Whether a

particular act or practice gives rise to a CPA violation is a question of law. *Leningang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 150, 930 P.2d 288 (1997).

In support of its claim for violation of the CPA, RCW 19.86, Whiteman alleged: Goodyear management misrepresented whether Goodyear would compete with dealers; Goodyear threatened dealers with increased competition if they sold other brand tires or did not expand to meet market demand, as determined by Goodyear; and Goodyear manipulated market data so as to deceive dealers as to their financial risks in expanding their operations.

With respect to the latter allegation, Mr. Scott stated Goodyear's profit projections were not reasonably based or valid, but were represented to be so by Goodyear and relied upon by dealers. Further, "Goodyear's conduct in representing expertise in site development, development of the proper facility, a location, and a market . . . and the sales projections and profits were all expected to be relied upon by the independent dealers." "Consequently, nearly every retail store Goodyear built for lease to dealers and their own company in small markets in Washington and Oregon have since closed."

Whiteman's evidence does not show Goodyear engaged in unfair or deceptive acts or that its conduct affected the public interest. Only acts that have the capacity to deceive *a substantial portion* of the public are actionable. *Hangman Ridge*, 105 Wn.2d at 785. Whiteman has not made such a showing here. Goodyear's conduct was not directed at the public. Its competition with dealers and the tactics it used to secure dealership expansions had no deceptive capacity affecting the public in general.

■ Whether the public has an interest in any given action is determined by reference to several factors, depending upon the context in which the alleged acts were committed. *Hangman Ridge*, 105 Wn.2d at 789-90. When the transaction is a private dispute, as it is here, and not a consumer transaction, it is more difficult to show public interest in the subject matter. There must be a likelihood

additional persons have been or will be injured in the same fashion. *Hangman Ridge*, 105 Wn.2d at 790. Relevant factors include: whether the acts were committed in the course of the defendant's business; whether the defendant advertised to the public; whether the defendant actively solicited the plaintiff, thereby indicating other similar solicitations took place; and whether the parties occupied unequal bargaining positions. *Hangman Ridge*, 105 Wn.2d at 790-91.

Here, Goodyear committed the allegedly unfair and deceptive acts in the course of its business dealings with Whiteman. However, the relationship between it and Whiteman was not typical of those present in cases giving rise to cognizable consumer protection complaints. Rather, Mr. Whiteman was an experienced businessman who had dealt with Goodyear for years. Even dealers without such a long association with Goodyear were persons whose experience indicated they were better able than the average consumer to judge for themselves the risks associated with Goodyear's proposals. They are not representative of bargainers vulnerable to exploitation. Accordingly, we hold as a matter of law Goodyear's alleged unfair and deceptive acts did not affect the public interest.

The trial court properly dismissed Whiteman's action for violation of the CPA.

### TORTIOUS INTERFERENCE

Whiteman asserts it raised issues of fact sufficient to escape summary dismissal of its action against Goodyear for tortious interference with its business expectancies.

■ The elements of tortious interference are: (1) The existence of a valid business expectancy; (2) defendant's knowledge of that expectancy; (3) defendant's intentional interference with that expectancy; (4) defendant's improper purpose or use of improper means in so interfering; and (5) the plaintiff's resultant damages. *Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 137, 839 P.2d 314 (1992).

Whiteman's cause of action, insofar as it relates to Goodyear competing with it, fails as a matter of law because Goodyear's alleged "interference" was not improper. In the dealer contracts, Goodyear unequivocally reserved its right to compete with Whiteman. Goodyear's past conduct of not competing did not mean it was improper for it to compete in the future. Rather, Goodyear in the past simply had not acted upon its right to compete.

However, Whiteman presented a dispute of material fact as to whether Goodyear permitted Mr. Anthony to sell to Whiteman customers, in violation of his covenant not to compete. Mr. Anthony's employment agreement provided that if he resigned, he would not engage in the tire business in Grant County or within a 30-mile radius of Othello, for a period of one year. Mr. Anthony left Whiteman's employment on September 30, 1986. Mr. Anthony went to work for Goodyear's Pasco store immediately after he resigned his position at Whiteman's. Mr. Whiteman stated he notified Goodyear of the existence of the noncompete agreement. He further stated he reviewed Goodyear's invoices for the one-year period following Mr. Anthony's resignation and found many of them bore the initials "j.a.," and were for sales made within the area protected by the noncompete agreement. He attached to his declaration copies of these Goodyear Pasco store invoices. Mr. Whiteman said he complained to Goodyear about Mr. Anthony's activities while they were occurring, and Goodyear assured him those actions would cease. Mr. Whiteman named several Whiteman customers Mr. Anthony solicited.

If accepted, the foregoing facts would support a trial court's conclusion or a jury's verdict that Goodyear tortiously interfered in the performance of Whiteman's noncompete agreement with Mr. Anthony. We, therefore, hold the court erred when it dismissed Whiteman's cause

of action for tortious interference, but only with respect to the allegations concerning Mr. Anthony.[6]

WHITEMAN'S REMAINING CONTENTIONS

■■ Whiteman also assigns error to the superior court's dismissal of its counterclaim for estoppel, and seeks what amounts to advisory opinions on our part on issues relating to discovery sanctions and the propriety of Goodyear petitioning as Whiteman's judgment creditor for a writ of execution on Whiteman's counterclaims. Whiteman's estoppel theory is no more than a reassertion of its other causes of action under another name. The superior court recognized it as such, and properly dismissed it. As for Whiteman's arguments regarding discovery sanctions and the writ of execution, we decline comment. Neither item is ripe for review.

Brent and Jeanette Whiteman also assign error to the superior court's dismissal of their independent claims against Goodyear. Our affirmance of the court's dismissal of most of Whiteman's actions disposes of the independent claims as well. There is no evidence to suggest Mr. and Mrs. Whiteman's losses under their personal guaranties would have occurred simply as a result of Goodyear's tortious interference with the Whiteman/Anthony noncompete agreement.

■ Finally, we address Whiteman's argument the court erred when it ruled Whiteman could not recover punitive damages against Goodyear. While punitive damages

---

[6]Whiteman's action for tortious interference was commenced within the three-year statute of limitations. RCW 4.16.080(2). The complaint here was filed in August 1990. Mr. Anthony resigned on September 30, 1986. He went to work for Goodyear immediately. Mr. Anthony allegedly violated the noncompete agreement throughout the prohibited one-year period, ending September 30, 1987, within three years of the August 1990 filing of the complaint. Mr. Anthony's conduct involved a continuing or repeated injury, and the statute of limitations did not begin to run until the end of the one-year period he had agreed to refrain from competing with Whiteman. *See City of Rock Falls v. Chicago Title & Trust Co.*, 13 Ill. App. 3d 359, 300 N.E.2d 331, 334 (1973) ("Where a tort involves a continuing or repeated injury, the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease.").

are allowed in Ohio, the state of Goodyear's incorporation, they are not permitted in Washington. Washington has the most significant relationship with the underlying facts of this lawsuit. *See Barr v. Interbay Citizens Bank*, 96 Wn.2d 692, 699, 635 P.2d 441, 649 P.2d 827 (1981). The court properly determined Ohio's law on damages did not apply.

### HOLDING

We affirm the superior court with the exception of its dismissal of Whiteman's action for Goodyear's alleged tortious interference with Mr. Anthony's noncompete agreement.

SWEENEY, C.J., and BROWN, J., concur.

Reconsideration denied June 25, 1997.

Review denied at 133 Wn.2d 1033 (1998).