# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-1023

_____

| | | |
|---|---|---|
| Countrywide Services Corporation, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri |
| SIA Insurance Company, (A Risk | * | |
| Retention Group), Ltd., | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  September 15, 2000

Filed:  December 15, 2000

_____

Before BOWMAN, BEAM, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

This is a contractual dispute between SIA Insurance Company (SIAI), and its former claims handling contractor, Countrywide Services Corporation (Countrywide). After SIAI terminated their contract, Countrywide billed SIAI for over $165,000.00 in allegedly unpaid invoices.  When SIAI did not pay, Countrywide filed suit.  The district

court[1] dismissed SIAI's counterclaim and, on Countrywide's motion in limine, excluded evidence supporting SIAI's affirmative defenses. The jury awarded Countrywide $165,945.26, an amount equal to the unpaid invoices plus interest. SIAI appeals, claiming error in the dismissal of its counterclaim, the granting of Countrywide's motion in limine, and the admission of the invoices into evidence under the business records exception to the hearsay rule. We affirm.

I

SIAI, an insurance provider for members of the scaffolding industry, contracted with Countrywide for claims handling services. In July 1996, SIAI and Countrywide renewed their contract. The contract stated in relevant part:

> THE "SERVICING COMPANY" AND THE "CLIENT" MUTUALLY AGREE AS FOLLOWS:
>
> (a) . . . .
>
> (b) The term of this contract is continuous from its effective date up through June 30, 1997. The Contract can be terminated by either the "Servicing Company" or the "Client" with or without cause and for any reason whatsoever by sixty (60) days prior written notice.
>
> (c) Upon termination of this Agreement, the "Client" shall have the sole option of determining the manner of disposition of all claims and/or losses outstanding as of the date of termination; that is, in its discretion the "Client" may assume the claims services on such outstanding claims and/or losses covered by this Agreement; it may appoint another servicing company to perform such services; or it may authorize the "Servicing

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

Company" to handle the runoff of such outstanding claims and/or losses to their conclusion pursuant to the terms and conditions in this Agreement.

(d)     In the event of termination of this Agreement by either party, the "Client" shall have access to, and ultimate control of, all case files, statistical reports and analyses, loss runs, loss control data or other records maintained by the "Servicing Company" in connection with this Agreement. The "Servicing Company" shall be entitled to retain copies of all such records, and the reasonable cost of packing, mailing and/or shipping such records to the "Client" or its designee shall be borne by the "Client."

The SIAI account was for several years handled by two Countrywide employees, Robert Zinselmeier and William Ruhnke. In spring/summer of 1996, SIAI began the process of creating its own claims servicing company. SIAI enlisted the aid of Zinselmeier and Ruhnke in forming International Managers, Inc. (IMI). In November 1996, SIAI gave notice to Countrywide that it was terminating the contract, and requested that its files be transferred to IMI. On the same day, Zinselmeier and Ruhnke gave notice to Countrywide and went to work for IMI.

Countrywide then did two things: it sued Zinselmeier and Ruhnke for fraud and tortious interference with contract, and it invoiced SIAI for various allegedly un-invoiced charges totaling over $165,000.00. Countrywide contends that, at the request of SIAI's president, Zinselmeier and Ruhnke (although already working for IMI) reviewed these invoices and with minor exceptions approved them for payment. Nevertheless, SIAI refused to pay the amounts on the invoices, so Countrywide filed suit. SIAI counterclaimed, alleging that Countrywide's suit against Zinselmeier and Ruhnke violated the implied duty of good faith and fair dealing that Countrywide owed SIAI under the contract. SIAI also employed this claim as an affirmative defense, stating that Countrywide's prior breach excused SIAI's subsequent performance.

On Countrywide's Rule 12(b)(6) motion, the district court dismissed SIAI's counterclaim. The district court also granted Countrywide's motion in limine to exclude all evidence of the suit against Zinselmeier and Ruhnke, thus gutting SIAI's affirmative defense. SIAI also moved to exclude the invoices from evidence as hearsay. The district court denied this motion.

At trial, Countrywide laid the foundation for introduction of the invoices by calling current Countrywide employees to testify as to standard invoicing practices, as well as the creation of the invoices in question. SIAI objected to the introduction of each invoice as hearsay. Outside the presence of the jury, the court and counsel reviewed each invoice, and the court found them admissible under the business records exception.

The jury returned a verdict for Countrywide in the amount of $165,945.26, the amount of the unpaid invoices plus interest. This appeal followed.

II

SIAI first alleges error in the dismissal of its counterclaim against Countrywide. We review a district court's ruling on whether a complaint states a claim de novo. See Haberthur v. City of Raymore, Mo., 119 F.3d 720, 723 (8th Cir. 1997). "A complaint should only be dismissed under Fed. R. Civ. Pro. 12(b)(6) if, construed most favorably to the nonmoving party, 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Id. (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). All factual allegations in SIAI's counterclaim must be accepted as true. Haberthur, 119 F.3d at 723. After reviewing the contract and counterclaim, we affirm the district court's order.

SIAI's counterclaim states that Countrywide breached the contract's implied duty of good faith and fair dealing when it filed a baseless lawsuit against Ruhnke and

Zinselmeier, because that lawsuit impeded their ability to conduct IMI's business of managing SIAI claims. SIAI alleges that Countrywide's suit against its former employees was filed only as a means of frustrating SIAI's ability to utilize a claims processing company other than Countrywide. SIAI points to the provision of the contract which allows SIAI, after giving notice of termination, to determine the disposition of all remaining claims. This includes the option of appointing another company to service the claims. SIAI alleges that one of the benefits it expected from this provision was to be able to "effectuate a smooth transition of the claims in the manner directed by SIAI." Appellant's Brief, 21. While Countrywide may have complied with the letter of the agreement by transferring SIAI's files, SIAI argues that by interfering with IMI's employees, Countrywide prevented a smooth transition and thus denied SIAI the benefit of the bargain. The district court granted Countrywide's motion to dismiss the counterclaim for failure to plead a cause of action.

Missouri law implies a duty of good faith and fair dealing in every contract. See Acetylene Gas Co. v. Oliver, 939 S.W.2d 404, 410 (Mo. App. 1996); Slone v. Purina Mills Inc., 927 S.W.2d 358, 368 (Mo. App. 1996). This implied duty "prevents one party to a contract to [sic] exercise a judgment conferred by the express terms of the agreement in such a manner that evades the spirit of the transaction or denies the other party the expected benefit of the contract." Acetylene Gas, 939 S.W.2d at 410. Put another way, "[i]t is the duty of one party to a contract to cooperate with the other to enable performance and achievement of the expected benefits." Slone, 927 S.W.2d at 368.

The terms of the contract simply do not extend as far as SIAI would like. The extent of the duty of good faith is determined by the express terms and expected benefits of the contract; here, the expected benefit was that Countrywide would transfer SIAI's files to the claims handling company of SIAI's choice. If Countrywide had done so in such a manner as to render the files unusable, that might have constituted a breach of the duty of good faith and fair dealing. However, Countrywide's *express*

duties under the contract ended when SIAI designated a new claims handling company and Countrywide shipped SIAI's records. Thus, the *implied* duty of good faith should also end at that point. SIAI can have no legitimate expectations beyond the bounds of these terms.

Countrywide had no obligation under the contract to act or refrain from acting so as to ensure that the newly-designated claims company successfully handled SIAI's account. Additionally, SIAI cannot legitimately expect Countrywide to give up its right to pursue legal remedies for perceived wrongs committed by its former employees, even if such litigation disrupts their work on behalf of SIAI.[2] As one court has noted, the implied duty of good faith and fair dealing "does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." M/A-Com Security Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990) (citation omitted). SIAI's claimed expectations go beyond the bounds of the bargain, whether express or implied, that SIAI and Countrywide struck when they began their relationship. The district court properly dismissed the counterclaim.

---

[2]SIAI argues that the Restatement (Second) of Contracts provides support for its argument that bad faith litigation violates the duty of good faith and fair dealing: "The obligation of good faith and fair dealing extends to the assertion, settlement and litigation of contract claims and defenses. The obligation is violated by dishonest conduct such as conjuring up a pretended dispute. . ." Restatement (Second) of Contracts § 205 cmt. e. See also ABA Distributors, Inc., v. Adolph Coors Co., 542 F. Supp. 1272, 1285 (W.D. Mo. 1982); Riveredge Associates v. Metro. Life Ins. Co., 774 F. Supp. 897, 899-900 (D.N.J. 1991); Cohn v. Taco Bell Corp., No. 92 C 5852, 1995 WL 247996, at *7 (N.D. Ill. 1995). However, SIAI ignores the pertinent language–"*of contract claims and defenses.*" In the cases cited, the litigation referred to a dispute between the parties to the contract. Here, the litigation between Countrywide and its former employees does not involve SIAI, and does not concern the contract. The Restatement comment is inapposite.

III

SIAI next complains that the district court erred in granting Countrywide's motion in limine and preventing SIAI from introducing any evidence of Countrywide's alleged prior breach of the implied duty of good faith and fair dealing. SIAI had intended to present this evidence as an affirmative defense to its nonpayment of the outstanding invoices, arguing that a prior material breach of the contract excused further performance by the non-breaching party. We review the district court's ruling on Countrywide's motion in limine for abuse of discretion. See White Consol. Indus. Co. v. McGill Mfg. Co., Inc., 165 F.3d 1185, 1192 (8th Cir. 1999).

As discussed above, Countrywide's actions are too attenuated from the express terms of the contract to be deemed a violation of the implied duty of good faith and fair dealing. Therefore, Countrywide's actions do not provide SIAI with justification for nonpayment. The district court did not abuse its discretion in granting Countrywide's motion in limine.

IV

Finally, SIAI complains of the district court's admission of Countrywide's invoices which, according to SIAI, are hearsay. The invoices were admitted under the business records exception.[3] SIAI contends that the invoices, for numerous reasons,

---

[3]Rule 803(6) of the Federal Rules of Evidence provides an exception to the hearsay rule for

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation,

do not meet the requirements of the business records exception and are therefore inadmissible.

We find no abuse of discretion in the district court's decision to admit the invoices.  See Falcon Jet Corp. v. King Enterp., Inc. (In re King Enterp., Inc.), 678 F.2d 73, 77 (8th Cir. 1982); see also Fed. R. Evid. 807.  Further opinion would have no precedential value.  See 8th Cir. R. 47B.

V

For the above reasons, we affirm the decision of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6).